UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,   CASE NO: 24-20295-CR-JB

        Plaintiff,

vs.

EULIDES OLIVEROS-LUGO,

        Defendant.
_____/

**DEFENDANT OLIVEROS-LUGO'S OBJECTIONS
TO THE PRESENTENCE INVESTIGATION REPORT**

COMES NOW the Defendant, Eulides Oliveros-Lugo by and through the undersigned attorney and submits the following objections to the Pre-sentence Investigation Report (PSI) and states as follows:

**Objection to Paragraph 12 of the PSI:**

1) While Eulides Oliveros-Lugo may not have physically been booked into the Federal Detention Center (FDC) Miami until July 2, 2024, he was initially detained by the United States Coast Guard on June 26, 2024. [DE:187:5]. Thus, the Defendant should receive credit for the entire time he has been in United States custody; which is from June 26, 2024, to the present.

**Objection to Paragraph 16 of the PSI:**

2) Eulides Oliveros-Lugo objects to the Pre-sentence Investigation Report (PSI) viewing all defendants named in the above-reference cause as "being equally culpable participants in the instant drug smuggling scheme" as there were

others, on board the vessel and elsewhere, who had a larger role and more control over the vessel than Mr. Oliveros-Lugo.

3) For example, the defendants in this case were acting at the direction of un-indicted coconspirators; each defendant was a fisherman off the coast of Venezuela who was offered between $1000 to $2000 to deliver items to an unknown location. [DE:187, ¶ 13]. Moreover, Defendant Tochon-Lopez identified himself as the master of the vessel. [DE:187 ¶ 9]. While Tochon-Lopez may have shared that the plan was to alternate duties amongst the others, it was no doubt at his direction as the master of the vessel. Further, Mr. Oliveros-Lugo meets the "safety-valve" criteria, pursuant to §18 USC 3553(f), which requires that he not be an organizer, leader, manager or supervisor of others in the offense. [DE: 187: ¶20]. Mr. Oliveros-Lugo was a mere courier and cannot be "equally culpable" as Tochon-Lopez or the others.

**Objection to Paragraph 20 of the PSI:**

4) Eulides Oliveros-Lugo also objects to the PSI report's failure to account for a two (2) level reduction for safety valve pursuant to §18 USC 3553(f) and §5C1.2(a). The PSI report is correct, insofar as Mr. Oliveros Lugo meets the criteria of subsections §5C1.2(a)(1) through (4) and §18 USC 3553(f), which refer to the limitation on applicability of minimum sentences in certain cases, because: Mr. Oliveros-Lugo has less than four criminal history points; has no prior 3-point offenses, or a prior 2-point violent offense; he did not use violence

or threats of violence, or possess any firearm in connection with the offense; the offense did not result in death or serious bodily injury to any person; and he was not an organizer, leader, manager or supervisor of others.

5) Mr. Oliveros-Lugo, through undersigned counsel, reached out to the AUSA, Yvonne Rodriguez-Schack for purposes of resolving the safety valve statement. This issue should be resolved in a few days by way of a written safety valve statement. In addition, Mr. Oliveros-Lugo has provided a factual proffer, truthfully providing the Government with the information regarding his involvement in the offense. [DE:143]. Accordingly, Mr. Oliveros-Lugo should receive a two (2) level reduction for safety valve.

**<u>Objection to Paragraph 23 of the PSI</u>**:

6) Mr. Oliveros-Lugo appreciates the PSI report accounting for a two (2) point reduction in the offense level for his role in the offense, pursuant §2D1.1(e)(2)(B)(i); however, Mr. Oliveros-Lugo should receive a four (4) level mitigating role reduction, as he was a minimal participant in the offense pursuant to §2D1.1(e)(2)(B)(i) and §3B1.2(a). [1]

7) Under the new special instruction at §2D1.1(e)(2), a person's primary function in the global drug trade is sufficient, on its own, to trigger a role reduction.

---

[1] If the Court finds that Mr. Oliveros-Lugo offense level should not be decreased by four (4) levels, then this Court should decrease his offense level by three (3) levels pursuant to §2D1.1(e)(2)(B)(ii) and §3B1.2(b).

Section 2D1.1(e)(2)(B) instructs courts to apply a two (2) level reduction pursuant to the provisions of §3B1.2, "regardless of whether the offense involved other participants in addition to the defendant, and regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." §2D1.1(e)(2)(B)(USSG 2025). However, the guideline does not limit the reduction to two (2) levels. *Id.*

"The extent of the adjustment shall be based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* In addition to the circumstances identified in §3B1.2, an adjustment under §3B1.2(a) [for minimal participant] is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function. *See* §2D1.1(e)(2)(B)(i)(USSG 2025)[2] Subsection (i) provides that "[a]n adjustment under §3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout." *Id.*

In its written reasoning for "Amendment 833", the Commission

---

[2] Compare to: §2D1.1(e)(2)(B)(ii)(USSG 2025) (ii)an adjustment under §3B1.2(b) is generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as *distributing* controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (e.g., the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense).

highlighted its concern by pointing to the Commentary to §3B1.2 (*see* USSG App. C, amend. 794, 2015)). However, the

---

Commission most notably commented:

> Commission data shows that the prior amendment did not result in a sustained increase in application of the mitigating role adjustment in §2D1.1 cases. Commission data show that when §3B1.2 is applied in §2D1.1 cases, the vast majority of these cases receive only a 2-level reduction; 3- and 4-level reductions are rarely applied. Furthermore, Commission data shows variations across districts in application of §3B1.2 to §2D1.1 cases. The new special instruction at §2D1.1(e) addresses the application of §3B1.2 to §2D1.1 cases as follows.
>
> The amendment expands the circumstances in which an adjustment under §3B1.2 is warranted in §2D1.1 cases by instructing courts that an adjustment is generally warranted if the defendant's "primary function" in the offense was performing a low-level trafficking function. Section 2D1.1(e)(2)(A) directs the court to determine whether an adjustment under §3B1.2 applies as a court already does under the Guidelines Manual. Section 2D1.1(e)(2)(B) then provides that, in addition to the circumstances identified in §3B1.2, an adjustment under §3B1.2 is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function. Thus, a defendant sentenced under §2D1.1 may qualify for a mitigating role adjustment under §3B1.2 by direct application of that adjustment or by use of the special instruction in §2D1.1(e)(2)(B).
>
> To ensure courts focus on a defendant's predominant trafficking-related activities, the Commission selected "primary function" to guide courts in determining whether an adjustment is appropriate. Due to the wide variety of functions performed by individuals in drug trafficking offenses, the examples listed in §2D1.1(e)(2)(B) are illustrative rather than a definitive list.

To assist courts in determining the appropriate level of reduction, the amendment provides examples of functions generally warranting an adjustment under §3B1.2(a) and (b). Section 2D1.1(e)(2)(B)(i) states that a four-level adjustment under §3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions. It lists as examples serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout. Section 2D1.1(e)(2)(B)(ii) states that a two-level adjustment under §3B1.2(b) is generally warranted if the defendant's primary function in the offense was another low-level trafficking function. It lists as examples distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (e.g., the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship or by threats or fear to commit the offense).

The amendment places the special instruction in §2D1.1 instead of §3B1.2 to highlight that the rules for determining §3B1.2 eligibility are different in §2D1.1 cases. For purposes of the special instruction at §2D1.1(e)(2)(B), the provisions of §3B1.2 apply in determining whether a mitigating role adjustment is warranted, with two exceptions: the amendment provides that the adjustment shall apply regardless of whether the offense involved other participants in addition to the defendant, and also regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity. The Commission determined that these two provisions in the Commentary to §3B1.2 may discourage a court from applying a mitigating role adjustment in single-defendant drug trafficking cases or drug trafficking cases where the defendant performed a similar low-level function as other participants in the criminal activity, but an adjustment may nevertheless be appropriate. Accordingly, the Commission concluded that these provisions shall not apply in assessing whether a mitigating role adjustment is warranted based on a defendant's low-level function in a drug trafficking offense.

The amendment specifies that the mitigating role provisions in §2D1.1(a)(5) and the 2-level reduction at §2D1.1(b)(17) apply regardless of whether the defendant receives the §3B1.2 adjustment by direct application of §3B1.2 or by use of the special instruction in §2D1.1(e)(2)(B). This instruction ensures that any individual who receives a mitigating role adjustment, regardless of the mechanism, may also receive the reductions in §2D1.1(a)(5) and §2D1.1(b)(17).

USSG App. A, amend. 833, 2025 (available at https://www.ussc.gov/guidelines/amendment/833). For the reasons previously discussed, Mr. Oliveros-Lugo meets

the criteria for a four (4) level reduction as a minimal participant.[3]

**Objection to Paragraph 26 of PSI:**

8) Mr. Oliveros-Lugo objects to his Total Adjusted Offense Level (Subtotal) being a level 29. **It appears that there is a mathematical miscalculation as the Base Offense Level starts at 32, then rather than subtracting 2 levels, 2 Levels are added. Thus, the Adjusted Offense Level is incorrect at 34. The correct Adjusted Offense Level should be 30 and not 34.** In addition, Pursuant to the aforementioned objections, Mr. Oliveros-Lugo's Adjusted Offense Level should be the following, depending on the role adjustment:

a) an Adjusted Offense Level of 23, if a four (4) level reduction is applied; or

b) an Adjusted Offense Level of 24, if a three (3) level reduction is applied.

**Objection to Paragraph 30 and Paragraph 60 of the PSI:**

Mr. Oliveros Lugo objects to his Total Offense Level being a 29. Pursuant to his objection to paragraph 19 above, for failure to reduce the offense level by two (2) levels, his Total Offense Level should be, depending on

---

[3] If the Court finds that Mr. Oliveros Lugo's role in the offense is that of a minimal participant, meeting the criteria of §2D1.1(e)(2)(B)(i)(USSG 2025), and he receives the 4-level reduction in §3B1.2(a) and the offense involved all of the following factors:(A) the defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; (B) the defendant received no monetary compensation from the illegal purchase, sale, transport, or storage of controlled substances; and (C) the defendant had minimal knowledge of the scope and structure of the enterprise, then this Court should decrease Mr. Oliveros-Lugo's offense level by [another] 2 levels. §2D1.1(b)(17)(USSG 2025).

the role adjustment[4]:

    a) a Total Offense Level of 21, if a four (4) level role adjustment is applied (yielding a 37 to 46 month guideline range); or

    b) a Total Offense Level of 22, if a three (3) role adjustment is applied (yielding a 41 to 51 month guideline range); or

    c) a Total Offense Level of 23, if the two (2) level role adjustment in the PSI report is upheld (yielding a 46 to 57 month guideline range).

Mr. Oliveros-Lugo specifically objects to paragraph 60 insofar as his guideline term of imprisonment being 120 months. As discussed above, and as the PSI report indicates, Mr. Oliveros-Lugo is safety valve eligible [DE:187 ¶ 20].

**<u>Objection to Paragraph 60 of the PSI</u>**:

As stated above, Mr. Oliveros-Lugo objects to the PSI report's determination that the Total Offense Level is 29. As noted above, this appears to be a miscalculation and it should be Total Offense Level 25. Furthermore, Mr. Oliveros-Lugo is safety valve eligible, and objects to the PSI report's recommendation that he be sentenced to a mandatory term of imprisonment of 120 months and or within a guideline range of 87 to 108 months.

Based on the aforementioned objections, and depending on the role

---

[4] Except if the Court finds that Mr. Oliveros-Lugo's' role in the offense is that of a minimal participant meeting the criteria of §2D1.1(b)(17)(USSG 2025), then his offense level should be reduced by an additional two (2) levels, depending on the role adjustment.

reduction applied, the USSC JSIN[5] statistics are as follows:

a) based on a Total Offense Level of 21, if a four (4) level role adjustment is applied, and a Criminal History category of I: During the last five fiscal years (FY2020-2024), there were 675 defendants whose primary guideline was §2D1.1 and Powder Cocaine was the primary drug type, with a Final Offense Level of 21 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 656 defendants (97%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 28 month(s) and the median length of imprisonment imposed was 30 month(s); or

b) based on a Total Offense Level of 22, if a three (3) role adjustment is applied, and a Criminal History category of I: During the last five fiscal years (FY2020-2024), there were 75 defendants whose primary guideline was §2D1.1 and Powder Cocaine was the primary drug type, with a Final Offense Level of 22 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 74 defendants (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment

---

[5] https://jsin.ussc.gov/analytics/saw.dll?Dashboard

imposed was 31 month(s) and the median length of imprisonment imposed was 37 month(s); or

c) based on a Total Offense Level of 23, if the two (2) level role adjustment in the PSI report is upheld, and a Criminal History category of I: During the last five fiscal years (FY2020-2024), there were 1007 defendants whose primary guideline was §2D1.1 and Powder Cocaine was the primary drug type, with a Final Offense Level of 23 and a Criminal History Category of I, after excluding defendants who received a §5K1.1substantial assistance departure. For the 981 defendants (97%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 33 month(s) and the median length of imprisonment imposed was 36 month(s).

**<u>Objection to Paragraph 72 of the PSI:</u>**

While the probation officer may not have identified any factors that would warrant a variance from the applicable guideline range, pursuant to 18 USC 3553(a), there are several mitigating factors that warrant a downward variance. These will be addressed in a separate sentencing memorandum.

**WHEREFORE** Mr. Oliveros-Lugo requests that this Honorable Court sustain the aforementioned objections to the PSI report.

Respectfully submitted,

                                      **Encinosa Law, P.A.**
                                      **Israel Jose Encinosa, Esq.**
                                      8950 SW 74th Court,
                                      Suite 2201
                                      Miami, Florida  33156-3181
                                      Tel. (305) 804-6976
                                      Fax. (305) 203-4707
                                      E-mail: encinosalaw@reagan.com

                        By: /s/ *Israel Jose Encinosa*
                                Israel Jose Encinosa, Esq.
                                FBN 435007

CERTIFICATE OF SERVICE

I HEREBY certify that on December 1, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Israel Jose Encinosa*
Israel Jose Encinosa, Esq.